# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD MASTALER, an individual,<br><br>  Plaintiff,<br><br>  vs.<br><br>UNUM LIFE INSURANCE COMPANY, a Delaware Corporation, et al.,<br><br>  Defendants. | CASE NO. 11cv1210 DMS (NLS)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO CONFIRM ERISA'S APPLICATION AND PREEMPTION**<br><br>[Docket Nos. 13, 28] |

This matter comes before the Court on Defendants The Paul Revere Life Insurance Company and Unum Group's motion to confirm ERISA's application and preemption. Plaintiff filed an opposition to the motion, and Defendants filed a reply. For the reasons discussed below, the motion is granted.

## I.
## BACKGROUND

Plaintiff Richard Mastaler is a former executive employee of Magellan Health Services, Inc. Magellan is a large publicly held corporation in the health care industry and employs approximately 4,900 people. At some time prior to 1997, Magellan entered into an arrangement with The Paul Revere Life Insurance Company ("Paul Revere") designated as an "Employee Security Program," or "ESP." Pursuant to the ESP, Paul Revere agreed to issue individual disability income policies to specified

1 / / /

2 classes of Magellan executive employees that included specific coverage options and a substantial 3 premium discount of thirty percent (later increased to thirty-five percent).

4     On February 9, 1997, Plaintiff applied for disability insurance with Paul Revere under the ESP. 5 Paul Revere issued a policy to Plaintiff on April 1, 1997. The policy does not include any mention of 6 the Employee Retirement Income Security Act ("ERISA") or ERISA requirements.

7     While Plaintiff was employed at Magellan, Magellan paid the premiums on Plaintiff's policy. 8 In September 1997, Plaintiff left Magellan's employ and moved to San Diego. Plaintiff elected to 9 continue his coverage under the Paul Revere policy, and thereafter paid the premiums directly to Paul 10 Revere.

11     In April 2002, Plaintiff suffered a heart attack while participating in strenuous exercise. The 12 following month, Plaintiff submitted a claim under the policy. Defendants paid the claim, but advised 13 Plaintiff they would only pay benefits until Plaintiff reached the age of 65 on January 31, 2011. Plaintiff 14 appealed that decision, but his appeal was denied.

15     On April 27, 2011, Plaintiff filed the present Complaint in San Diego Superior Court. In the 16 Complaint, Plaintiff alleges the following claims for relief: (1) breach of contract, (2) bad faith, (3) 17 violation of California Business and Professions Code § 17200, and (4) declaratory relief. Defendants 18 removed Plaintiff's Complaint to this Court on June 2, 2011. The present motion followed.

## II.

## DISCUSSION

21     Defendants move to confirm ERISA's application to this case. They argue the policy is part of 22 an "employee welfare benefit plan" under ERISA, therefore ERISA preempts Plaintiff's claims. 23 Plaintiff disputes that the policy is part of an "employee welfare benefit plan," and thus whether his 24 claims are preempted.

25     Under ERISA § 3(1), 29 U.S.C. § 1002(1), an "employee welfare benefit plan" or "welfare plan" is: "(1) a 'plan, fund or program' (2) established or maintained (3) by an employer or by an employee organization, or by both, (4) for the purpose of providing medical, surgical, hospital care, sickness, accident, disability, death, unemployment or vacation benefits, apprenticeship or other training programs, day care centers, scholarship funds, prepaid legal services or severance benefits (5) to the participants or their beneficiaries."

*Kanne v. Connecticut General Life Ins. Co.*, 867 F.2d 489, 492 (9th Cir. 1989) (quoting *Donovan v. Dillingham*, 688 F.2d 1367, 1371 (11th Cir. 1982) (*en banc*)).  The parties do not dispute that elements (1), (3), (4) and (5) are met in this case.  However, they do dispute element (2).  Because ERISA preemption is an affirmative defense, Defendants bear the burden of establishing that element (2) is satisfied.  *Id.* at 492 n.4.

In an effort to meet that burden, Defendants rely on the following facts.  First, they assert Magellan arranged for the insurance coverage by entering into the ESP.  Notably, Defendants do not provide a copy of the ESP because it "no longer exists[.]"  (Decl. of Roxanne Kaminski in Supp. of Mot. ("Kaminski Decl.") ¶ 9.)  Plaintiff does not appear to dispute the existence of the ESP, but the mere existence of the ESP does not prove that Magellan established or maintained an employee welfare benefit plan.  Indeed, without the ESP, it is impossible for the Court to determine the details of the Plan or the nature of the relationship created thereby.  Thus, the ESP does not demonstrate Magellan established or maintained an employee welfare benefit plan.

Second, Defendants assert Magellan paid for the disability coverage at issue in this case. Without the ESP, Defendants rely on the Declaration of Roxanne Kaminski to establish this fact.  Ms. Kaminski states Magellan "was required to agree to pay 100% of the premium cost of the policies. Premiums were billed directly to the employer in a list bill that included all policies issued pursuant to the ESP arrangement."  (*Id.* ¶ 5.)  Plaintiff does not appear to dispute that Magellan paid the premiums pursuant to a list bill, but argues that under the practice of list billing, the premiums were ultimately paid by the employee-insureds, not Magellan.  In support of this argument, Plaintiff relies on the Declaration of Lloyd Rhodes, an insurance broker and consultant, who offers his understanding of the practice of list billing.  However, Mr. Rhodes's testimony is general, and says nothing about the specific list billing practice for the policy at issue here.  The only evidence relevant to that issue is Plaintiff's application for coverage, which states the coverage will be paid by the employer, Magellan.  (Kaminski Decl., Ex. 2.)  Although not overwhelming, this evidence supports Defendants' argument that Magellan paid for the coverage provided.  It is also evidence of the existence of an ERISA plan.  *Kanne*, 867 F.2d at 492.

The final factor Defendants rely on to support their argument that Magellan established or maintained the plan is the favorable terms provided to the policyholders.  Those terms include higher

- 3 -                          11cv1210

coverage amounts, discounted premiums and less documentation. Plaintiff does not dispute that he received these benefits, but argues they do not constitute employer contributions to the plan. Whether the employer contributed to the plan, however, is separate from whether the employer established or maintained the plan. On the latter issue, the favorable terms are not conclusive, but they are evidence of an ERISA plan. *See* 26 C.F.R. § 54.4980B-2(a).[1]

"The existence of an ERISA plan is a question of fact, to be answered in light of all the surrounding facts and circumstances from the point of view of a reasonable person." *Kanne*, 867 F.2d at 492 (citing *Credit Managers Ass'n v. Kennesaw Life & Accident Ins. Co.*, 809 F.2d 617, 625 (9th Cir. 1987)). In this case, the facts and circumstances support a finding that the policy at issue was part of an ERISA plan. Magellan entered into an agreement with Paul Revere to make disability insurance available to certain employees at discounted rates. Pursuant to that agreement, the employees received higher coverage with less documentation. The evidence also reflects Magellan paid the premiums for its employees. Under these circumstances, Defendants have shown the existence of an ERISA plan.

Nevertheless, Plaintiff argues the policy falls within a safe harbor from ERISA. That exemption states:

> For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an employee organization, under which (1) No contributions are made by an employer or employee organization; (2) Participation [in] the program is completely voluntary for employees or members; (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). All of these requirements must be met before the exemption will apply. *Stuart v. Unum Life Ins. Co. of Am.*, 217 F.3d 1145, 1150 (9th Cir. 2000).

/ / /

---

[1] Plaintiff requested leave to file a surreply so he could address this regulation. The Court has reviewed that application and Defendants' opposition thereto, and respectfully denies Plaintiff's request. Plaintiff capably set out his position in his application, and further briefing on the issue is unnecessary.

1  Plaintiff asserts all of the requirements are met in this case, but the record shows otherwise. As
2  discussed above, Magellan paid for the coverage for its employees. Those payments constitute
3  "contributions ... made by an employer," and thus defeat the first requirement of the exemption. *Roehrs*
4  *v. Minn. Life Ins. Co.*, 390 F.Supp.2d 886, 895-96 (D. Ariz. 2005). Accordingly, the policy does not
5  fall within the safe harbor.

6  Plaintiff's final argument against a finding that the policy is part of an ERISA plan is one of
7  conversion. Specifically, Plaintiff argues that although the policy may have been part of an ERISA plan
8  at its inception, it was converted to an individual policy when Plaintiff left Magellan's employ. Notably,
9  however, Plaintiff fails to provide any evidence that he converted his coverage to an individual policy.
10 Rather, the evidence reflects Plaintiff elected to continue his group coverage after leaving his
11 employment by paying the premiums himself. (Kaminski Decl., Ex. 6.) Under these circumstances, i.e.,
12 where there is a continuation policy rather than a converted policy, ERISA still applies. *See Qualls v.*
13 *Blue Cross of Cal., Inc.*, 22 F.3d 839, 843 n.4 (9th Cir. 1994) (stating converted policies continue to be
14 governed by ERISA).[2]

### III.
### CONCLUSION AND ORDER

17 Having established the existence of an ERISA plan, Defendants argue, and Plaintiff does not
18 dispute, that his claims are preempted by ERISA. Accordingly, the Court grants Defendant's motion
19 to confirm ERISA's application and preemption, and dismisses the present case.

20 **IT IS SO ORDERED**.
21 DATED: February 22, 2012

23  HON. DANA M. SABRAW
    United States District Judge

---

[2] The existence of a continuation policy rather than a converted policy also takes this case outside the scope of *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872 (9th Cir. 2001). Plaintiff relies on that case to support his argument that his policy ceased to be governed by ERISA after he left his employment, but unlike Plaintiff's policy here, the policy at issue in *Waks* was actually converted to an individual policy. Thus, *Waks* is inapplicable to the facts of this case.